# Harraway *v.* Harraway *et al.*

136   499
141   347
f141  679

### Bill in Equity for Cancellation of Deed.

1. *Transaction between persons occupying confidential relations; burden of proof.*—Where there exists confidential relations between parties. and the party subject to imposition or undue influence enters into a contract with, and makes a disposition of property to, the other, from which detriment is sustained by the one and benefit derived by the other, the contract or act of conveyance does not, of itself, import consent, but the law casts upon the party who takes the benefit and in whom the trust was reposed, the burden of proving that the transaction was just, fair and equitable in every respect and entered into with the free consent of the person who sustained the detriment.

2. *Same; same; conveyance by wife to husband.*—Where, at the date of the execution of a deed by a wife conveying to her husband land, the relation of husband and wife had existed

*.[Harraway v. Harraway *et al.*]

for many years, and the husband had managed the financial interests of the wife and had been her agent for many years and stood in that relation at the time of the execution of the deed, and the deed purports to convey 432 acres of land upon a recited consideration of one dollar, there existed at the time of the execution of the conveyance a confidential relation between the parties thereto, and the principles of law governing transactions between persons occupying confidential relations must be applied in determining the respective rights of the parties.

3. *Same; same; same; case at bar.*—On a bill filed by a wife to have a deed executed by her to her husband annulled and cancelled, it was averred and shown that the complainant and the grantee in the deed were husband and wife at the date of its execution, and had occupied that relation for many years; that the husband had managed the financial interests of the complainant and been her agent for many years and stood in that relation at the date of the execution of the deed; that the deed purported to convey 432 acres of land upon the recited consideration of one dollar; that the complainant only yielded her consent to the execution of the deed after much pressure had been brought to bear upon her by her husband and it was executed in his presence. There was some evidence for the respondents tending to show that the deed was executed by the complainant in consideration of a conveyance by her husband to complainant of certain property eight years previous to the execution of the deed, but there was no evidence as to the value of the land attempted to be conveyed by the deed of sale at the time of the conveyance by the husband to the wife. *Held*: That a confidential relation was shown to exist between the complainant and her husband, and that the burden was upon the respondents claiming under said deed to show that the transaction was just, fair and equitable and was executed by the complainant of her own volition, free from the influence of her said husband and agent, and that said burden was not met and the complainant was entitled to have said deed set aside and annulled.

4. *Bill to cancel deed from wife to husband; competency of witness.*—On a bill filed to have a deed executed by the complainant to her husband annulled and cancelled upon the ground that said deed was procured by the undue influence of the husband upon the wife, the relatives of the complain-

[Harraway v. Harraway *et al.*]

ant, though they will inherit her estate should she die intestate, are competent to testify to the declaration to complainant by the husband, who had died subsequent to the execution of said deed; such witnesses not being parties to the suit and having no pecuniary interest in the result thereof.

5.  *Evidence of consideration of deed; burden of proof.*—When a consideration different from the one expressed in the deed of conveyance is attempted to be shown, the burden of proving such different consideration is upon the party asserting it.

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellant, Eliza C. Harraway, against the appellees. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause upon pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayer for and ordered the bill dismissed.

From this decree the complainant appeals, and assigns the rendition thereof as error.

SIMPSON & JONES, for appellant.—A deed reciting a consideration of one dollar is voluntary, and does not show any consideration.—*Vincent v. Walker*, 93 Ala. 165; *Felder v. Harper*, 12 Ala. 612; *Kinnebrew v. Kinnebrew*, 35 Ala. 628; *Goodlet v. Hansell*, 66 Ala. 151; *McGehee v. Rump*, 37 Ala. 651.

Transactions between persons occupying fiduciary relations are *presumptively invalid*, and (without any proof of undue influence) the burden is upon the person receiving the benefit to prove affirmatively *"good faith," "full knowledge"* and *"independent consent."* 2 Pomeroy's Equity Jur., § 955. See also *Noble v. Moses Bros*, 81 Ala. 530, and authorities cited.

This principle is applied with great rigor to gifts, whether they are simple bounties, or purport to be the effects of liberality based *upon antecedent favors and obligations."*—2 Pom. Eq. Jur., § 957.

EMMETT O'NEAL and PAUL HODGES, *contra.*—Additional consideration to that expressed may be shown. *Cowan v. Cooper,* 41 Ala. 187; *Stringfellow v. Ivie,* 73 Ala. 209; 6 Ency. of Law (2d ed.), note 2. Our court has expressly decided this question.—*Eckles and Brown v. Carter,* 26 Ala. 567.

The legal title of the property conveyed by Mrs. Harraway was in her husband. The exhibit to deposition of Bedingfield shows that the lot and farm were conveyed by Dr. Harraway to his wife in February, 1884. This was prior to the adoption of the new married woman's law, and under the decisions of our court a conveyance directly from the husband to the wife was void. The legal title was not divested. See *Carrington v. Richardson,* 79 Ala. 101.

TYSON, J.—The bill in this cause was filed to have a deed executed by complainant, on the 18th day of July, 1898, to her husband, who was then living, annulled and cancelled. The respondents are the executors of the last will and testament of the deceased husband and the devisees under that instrument to the land attempted to be conveyed by the deed attacked. The ground of attack is undue influence in the procurement of the execution of the deed. The bill avers, and the evidence sustains the averment, that complainant and the grantee in the deed were husband and wife at the date of its execution and had occupied that relation for many years. It is also shown by the bill and the evidence that the husband had managed the financial interests of the complainant and had been her agent for many years and stood in that relation at the date of the execution of the deed. The deed purports to convey a tract of land comprising four hundred and thirty-two and 70-100 acres upon a recited consideration of one dollar.

On this state of facts, which are practically without dispute, it cannot be seriously doubted that the relation existing between the complainant and her husband must be classed as confidential, and that the principles

[Harraway v. Harraway *et al.*]

of law governing transactions between persons standing in that relation must be applied in determining the respective rights of the parties to this cause.

In *Holt v. Agnew*, 67 Ala. 367, speaking of a transaction involving the relation of husband and wife, the court said: "The capacity, the right to dispose of property at will and pleasure, is an incident of its ownership, which the law recognizes, and neither courts of law, nor of equity, can assume to control it, or to annul dispositions, because they may be esteemed injudicious, unwise, or improvident, or because they may not be such as a prudent man would make, or a just, generous, and honorable man would consent to receive. Consent, free and voluntary, is, however, an essential element of every contract and of every disposition of property. The contract, or the disposition, whatever may be its form, or character, generally, of itself, imports consent, and is sufficient evidence of it. There are relations in life, in which influence is acquired by the one party, and confidence reposed by the other—relations of which we usually speak as *confidential*—that open the way and afford opportunity for impositions, or undue influence, and yet, rather close the door to, and render difficult, the detection of its exercise. Such are the known relations of trustee and *cestui que trust*, guardian and ward, attorney and client, principal and agent, husband and wife, but the number or character of the relations are not defined by law; 'all the variety of relations in which dominion may be exercised by one person over another,' fall within the general term *confidential relations*. When, in such relation, the party subject to imposition, to undue influence, enters into a contract with, or makes a disposition of property to the other, from which detriment is sustained by the one, and benefit derived by the other, upon principles of public policy, there is no presumption of consent; the act or contract does not itself import it. The law casts the burden of proving the transaction fair and just, and the free consent of him who sustains the detriment, and is subject to the influence, upon the party who takes the benefit, and in whom trust was reposed. * * * In

all these cases, it is a very material and important circumstance, which may relieve the transaction of much of the suspicion attaching to it, and tend. to show the spontaneity of the *cestui que trust*, if he had full opportunity to obtain, and in fact did obtain competent and independent advice in reference to the transaction from counsel, or from disinterested friends, who were bound to him, and not subject to the influence of the trustee."

In *Malone v. Kelly*, 54 Ala. 538, it is said: "Any contract or agreement into which a party is lured by fraud, or into which he is drawn by surprise or mistake, superinduced by the party with whom he contracts, or which is extorted by the undue influence of the party claiming the benefit of it, is vicious and will be annulled. When no fiduciary relation exists between the parties, and they are of legal capacity, however improvident or disadvantageous the contract may appear, though marked by folly or indiscretion, it must stand until the party seeking to escape its obligation clearly proves that it was the result of fraud, mistake or surprise, or undue influence practiced upon him. * * * If, however, either of the known legal relations of guardian and ward, trustee and *cestui que trust*, attorney and client, or any other relation, in which confidence is reposed and accepted, or influence acquired, exists between the parties, on him to whom the confidence is extended and who has acquired the influence, if he claims the benefit of the contract, the law, on principle of public policy, casts the duty of proving its fairness, and that it is untainted by a violation of the confidence reposed, or an undue exercise of the influence of the relation. * * * In short, the rule, rightly considered, is, that the person standing in such relation, must. before he can take a gift, or even enter into a transaction, place himself exactly in the same position as a stranger would have been in, so that he may gain no other advantage whatever from his relation to the other party, beyond what may be the natural and unavoidable consequence arising out of the relation. Again, in a word, standing in the relation in which he

stands to the other party, the proof lies upon him (whereas, in the case of a stranger it would lie on those who opposed him), to show that he has placed himself in the position of a stranger, that he has cut off, as it were, the connection which bound him to the party giving or contracting, and that nothing has happened which might not have happened had no such connection subsisted."

In *Noble v. Moses*, 81 Ala. 540, in which are reviewed many authorities on the question, the court quotes approvingly the language employed by Sir J. G. TURNER. Lord Justice, in *Rhodes v. Bate*, L. R. 1 Ch. Ap. Cas. 252: "I take it to be a well established principle of the court, that persons standing in a confidential relation towards others cannot entitle themselves to hold benefits which those others may have conferred on them, unless they can show to the satisfaction of the court that the persons by whom the benefits had been conferred had competent and independent advice in conferring them." "Such has been," adds this court, "the almost unbroken current of decisions on each side of the Atlantic, from the very dawn of well defined English Equity Jurisprudence."

In *Waddell v. Lanier*, 62 Ala. 349, it is said: "In all the variety of the relations of life, in which confidence is reposed and accepted, *and dominion may be exercised by o e person over another*, the court will interfere and relieve against contracts or conveyances, when they would abstain from granting relief, if no particular relation existed between the parties, in which trust and confidence was reposed and accepted, and there was not an opportunity for an abuse of the confidence and the exercise of undue influence. Though in this class of cases there are often marks and traces of direct and positive fraud, of artifice, imposition, overreaching and unconscionable advantage, the principle on which the court proceeds, in granting relief, does not depend on the existence of such facts. Relief is granted, not because there is actual fraud, but on the principle of public policy, to prevent fraud, and to remove all temptation for

its commission. * * * A principle applying in all
this class of cases is, that on the person claiming under
the contract, or gift, rests the burden of proving satis-
factorily that it is just, fair and equitable in every re-
spect, and not on the party seeking to avoid it, to estab-
lish that it is fraudulent." See also *McQueen v. Wilson,*
131 Ala. 606; 31 So. Rep. 94; *Ferguson v. Lowery,* 54
Ala. 510; *Johnson v. Johnson,* 5 Ala. 90.

With the foregoing statement of the principles, to the
test of which the validity of the conveyance assailed
must be subjected, we will inquire if it is shown by the
respondents, that it is just, fair and equitable—that it
was executed by complainant of her own volition, free
from the influence of her husband and agent. We think
clearly not. It is nowhere shown that the confidential
relation was ever severed for a time by the interposition
of competent and independent advice. On the contrary,
the deed was prepared by the husband or at his instance
and request, and was executed by complainant at his in-
stance and in his presence. Furthermore, there can be
but little doubt that she was induced to execute it by
him. The evidence tended to show strongly that she
only yielded her consent to the execution of it after much
pressure had been brought to bear upon her by her hus-
band. We are not unmindful that the chancellor ex-
cluded much of this testimony and that its incompetency
is insisted upon here. In doing so, however, the chan-
cellor was in error. The witness testifying to these
facts, although related to the complainant and will in-
herit her estate should she die intestate, are not incom-
petent to testify to the declarations of the deceased hus-
band. They have no pecuniary interest in the result of
this suit and are not parties. "*Nemo est haeres viven-
tis.*"

So then, instead of the respondents sustaining the
burden of showing that the complainant's consent to
execute the deed was not the result of influence growing
out of the confidential relations existing between her and
her husband, that it was free and voluntary, and inde-

pendent of the relation, the evidence affirmatively shows the contrary. Furthermore, it might be shown, if necessary, that the evidence fails to satisfactorily establish, as contended for by the respondents, that this deed was executed in consideration of a conveyance by her husband to her of certain property in 1890, more than eight years previous. *Prima facie* the consideration recited in it of one dollar was the true one. Of course, it is open to explanation, and parol evidence is competent to show that the real consideration was an exchange of property.—*Eckles v. Carter*, 26 Ala. 563; *Hair v. Little*, 28 Ala. 236. When, however, a consideration different from the one expressed in the deed is attempted to be shown, the burden of proof is upon the party asserting it. But conceding that the respondents have shown that the real consideration of the deed sought to be annulled was as they contend, they have not shown, and the burden is upon them to do so, that the exchange was just, fair and equitable. There is no evidence in the record as to the value of the land, in 1890, attempted to be conveyed by the deed assailed by the bill. It is true there is some evidence of its value in 1901. But this is not evidence of what it was worth in 1890, when it is contended, that the agreement for the exchange was entered into.

Our conclusion, therefore, is that the complainant is entitled to the relief she asks for. To this end, a decree will be here entered reversing the decree below and ordering an annulment and cancellation of the deed, with directions to the register to hold a reference, take and state an account of the rents collected by the respondent Nelson, as executor, from the lands described in the bill, and report to the next term of the chancery court.

Reversed and rendered.