BEACH v. NEVINS.

(Circuit Court of Appeals, Third Circuit. June 4, 1908.)

No. 15.

EVIDENCE—PAROL—TO SHOW CONDITION.

In an action on a promissory note, evidence was admissible on the part of defendant that the note was delivered to the plaintiff upon an oral agreement that it should not become operative, but should be returned on the same day, unless plaintiff should secure and deliver to defendant certain stock of a corporation for which it was to be in payment, and that the stock was not so delivered. Such evidence did not tend to contradict or vary the note, but to show that its delivery was conditional, and that it never became an operative instrument.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1929–1944.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

M. W. Acheson, Jr., for plaintiff in error.

S. S. Mehard, for defendant in error.

Before MOODY, Circuit Justice, and DALLAS and GRAY, Circuit Judges.

GRAY, Circuit Judge. The material facts, as disclosed by the record brought up by the writ of error in this case, are as follows:

The appellant and plaintiff below, a citizen and resident of the state of New Jersey, was duly appointed, by the Court of Chancery of the state of New Jersey, a receiver of the International Mercantile Agency, a corporation of that state, and by the order of said court was clothed

with power and authority (not here disputed) to demand, sue for, collect and receive all the goods and chattels, rights and credits, moneys, effects, choses in action, bills, notes, and property of every description of the said corporation, and to institute at law or in equity all necessary legal proceedings for the recovery of the same. Suit was brought by the plaintiff, as such receiver, against the defendant, Lewis H. Nevins, a citizen of the state of Pennsylvania. The cause of action, as set out in the statement of claim, is, that on August 26, 1903, the said defendant made and executed his promissory note, to his own order, for $5,-000, payable January 1, 1904; that the said defendant thereupon indorsed in blank the said note and delivered the same, for value received and (of course) before maturity, to the said International Mercantile Agency; that said note was duly presented for payment, and payment thereof refused by the defendant, and that since the plaintiff's appointment as receiver, as aforesaid, he had made demand upon the defendant, who refused, and ever since has refused, to pay the said note, or any part thereof. The affidavit of defense sets forth, and there is evidence tending to show, that on the 26th day of August, 1903, the date of said note, there was a transaction in the city of New York, between the defendant and one Ross M. Turner, at that time secretary of the said International Mercantile Agency, in which, after certain representations made by said Turner as to the condition of said company and the value of its stock, it was agreed that if defendant would make the aforesaid note for $5,000 and give the same into the said Turner's possession, as secretary of the said company, he, Turner, would endeavor to get for the defendant 50 shares of the stock of said company, and deliver the same to the defendant on that same day, August 26, 1903, and that he would either deliver to the said defendant the certificates for the said 50 shares of said stock, or return him the said note on the evening of that same day, at the Hotel Victoria, in the city of New York; that, relying upon this stipulation that the said stock should be delivered or said note returned to the defendant on that same day, defendant executed and indorsed said note and delivered the same into the possession of the said Ross M. Turner.

It is admitted that the certificate for said stock was not delivered to the defendant on the said 26th day of August, nor until after the 18th day of September following, when the same was mailed by the said Turner from New York to the defendant, in Kittanning, Pa. The letter inclosing said stock was received by defendant, Nevins, October 2d, and returned to Mr. Turner in a letter dated that day, stating that it had been promised to be delivered to him at the Hotel Victoria on August 26th, the day of the purchase of the stock. On October 12th, this stock was remailed to the defendant by the president of the company, and on October 14th was again returned by the defendant, with the statement that it was so returned, "your company having failed to fulfill its part of the agreement made with me at the time I conditionally gave my note for the same, in not delivering the stock at the time specified." There was also evidence tending to show that at the time of the transaction in question, August 26, 1903, cotemporaneously with the signing, endorsing and delivery of the note sued upon to Turner, as secretary of

the said company, defendant signed a subscription contract in the following form:

"International Mercantile Agency, New York Life Building, 346–348 Broadway.

"Know all men by these presents, that I, Lewis H. Nevins, of the city of Kittanning, in the state of Pa., do hereby subscribe for fifty shares of stock of the common capital stock of the International Mercantile Agency, at $100 per share, amounting to $5,000. And I do hereby agree to pay within ——— from date of subscription the sum of five thousand dollars, being full amount of said shares.

"In witness whereof, I have hereunto set my hand and seal at New York the 26th day of August, one thousand nine hundred and three.

"Louis H. Nevins.

"Signed, sealed and delivered in the presence of T. M. Underhill."

Written on back: "Hotel Victoria."

There was also evidence tending to show certain representations made by Turner, as secretary of the company, at the time of the transaction above recited, as an inducement to the defendant to subscribe for said stock; these representations being to the effect that the company was in a prosperous condition, that the stock was worth and was selling for 25 per cent. above par, and the offer was made to obtain, as a special favor, if possible, 50 shares at par, and that within a few months thereafter, and shortly after the attempted delivery of the stock, the company was insolvent and its affairs placed in the hands of a receiver, as above stated.

This testimony, as well as the testimony in regard to the conditions alleged to have been attached to the transaction at the time of the delivery of the note, was admitted over the objection of the plaintiff. A request was also made for peremptory instructions on behalf of the plaintiff, which was refused by the court, and the case submitted to the jury. The court charged the jury that the case was submitted to them upon a single issue, viz., whether or not the note was conditionally or unconditionally issued to the agent of the International Mercantile Agency. The learned judge withdrew from the jury the consideration of any question as to false or fraudulent representations made by the agents of the company to the defendant, knowing them to be false or fraudulent at the time, stating that no such evidence had been adduced. There was a verdict for the defendant, and judgment duly entered thereon.

The various assignments of error to the charge of the court and to the admission of testimony, resolve themselves into the single question, whether the evidence offered by defendant and admitted by the court, as to the alleged understanding between defendant and the secretary of the company at the time of the delivery of the note, should not have been excluded upon the ground that it was an attempt to contradict, alter or vary a written instrument by parol. The position of the learned counsel for the plaintiff in error is, that the evidence of a cotemporaneous oral agreement, that the stock was to be delivered at a certain time and place, in default whereof the note was to be returned to the defendant, changed the written subscription contract, and that the testimony on that account should have been excluded, and the plaintiff's point for binding instructions have been affirmed. Further,

that in any view, plaintiff was entitled to an affirmance of his point, that if the jury found that the defendant did execute and deliver the unconditional written stock subscription contract, they should disregard the testimony as to the alleged cotemporaneous oral agreement.

We do not think the two writings, that of the subscription contract and that of the note, can be thus considered. The suit in the court below, brought by the plaintiff in error, was upon the written contract of the note, and the cotemporaneous oral agreement was applicable to it, as tending to prove a conditional delivery of the same. But, even though the making and delivery of the subscription contract and the making and delivery of the note be considered parts of one and the same transaction, the condition sought to be proved, with reference to the delivery of the note, if proved to the satisfaction of the jury, made the whole contract a conditional one. As we have said, the contract here sued on is the promissory note, the legal obligation attaching to which is sought to be enforced. The plaintiff had only need in the first instance to produce and prove the note as the note of the defendant, in order to make out his prima facie case. We think, however, the evidence tending to show a cotemporaneous understanding and agreement, upon which the note was executed and delivered, was properly admitted for the consideration of the jury, and that they were properly instructed by the court below that, if this evidence proved to their satisfaction that the making and delivery of the note was conditional, and that the condition had not been performed, the defendant was entitled to a verdict. To so hold, does not contravene the general rule against contradicting or varying the terms of a written contract by parol testimony. What was the intent of the parties as to the written contract becoming operative, may in such a case be inquired into, and evidence considered, tending to show that in accordance with that intent, it never did become operative; that its obligation was nonexistent.

In Ware v. Allen, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563, suit had been brought upon a promissory note for $10,000. The defense relied on was testimony tending to show that it was understood at the time the paper was signed or agreed upon, that it was to be of no effect, unless, upon consultation with one or both of two named persons, the defendants were assured that the proceeding was lawful, and that an attachment for the full amount of certain claims could be enforced. It was with reference to error assigned as to the admission of such testimony, that Mr. Justice Miller, in delivering the opinion of the Supreme Court, said:

"We are of opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or be ascertained thereafter. The present case is almost identical in its circumstances with that of Pym v. Campbell, in the Court of Queen's Bench, 6 El. & Bl. 370, 373. The defendants in that case had signed an agreement for the purchase of an interest in an invention, which the evidence showed was executed with

the understanding that it should not be a bargain until a certain engineer, who was to be consulted, should approve of the invention. There was a verdict for the defendants, which was sustained, and the following language was used by Erle, J., on discharging the rule to show cause: 'I think that this rule ought to be discharged. The point made is that this is a written agreement, absolute on the face of it, and that evidence was admitted to show that it was conditional; and if that had been so, it would have been wrong. But I am of opinion that the evidence showed that in fact there was never any agreement at all. ＊ ＊ ＊ If it be proved that in fact the paper was signed with the express intention that it should not be an agreement, the other party cannot fix it as an agreement upon those signing. The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible.' "

The cases of Davis v. Jones, 17 C. B. 625, Wallis v. Littell, 11 C. B. (N. S.) 369, Wilson v. Powers, 131 Mass. 539, and Pawling v. U. S., 4 Cranch (U. S.) 219, 2 L. Ed. 601, were cited and quoted from to the same effect.

The principle thus clearly enunciated, we think is applicable to the present case, and the judgment below is therefore affirmed.