# CHARLESTON.

W. S. LECKIE *et al. v.* L. G. BRAY.

Submitted September 6, 1922.   Decided September 12, 1922.

1. PLEADING—*Count in‾ Declaration Founded on Untenable Interpretation of Written Contract Insufficient.*

   A count in a declaration setting up a demand founded only upon an interpretation of a̤ written contract set forth in it at length, which is not tenable and cannot be sustained, is insufficient in law, and a demurrer thereto is properly sustained. (p. 459.)

2. CONTRACTS—*Written Contract Cannot be Changed by Construction, Unless Founded on Express Terms or Fair Implication.*

   No addition to the terms of a written contract, or transposition or modification thereof, can be made by construction, unless it has foundation in the written words of the paper or in a reasonable and fair implication arising out of such words or some provision thereof or purpose expressed by it. (p. 459.)

3. PLEADING—*Count of Declaration, Disclosing Demand Founded Solely on Allegations Sustainable by Inadmissible Evidence, Demurrable.*

   If a count in  declaration discloses on its face that the demand therein stated is founded solely upon allegations of fact to be sustained by inadmissible oral evidence, and not otherwise, objection thereto may be interposed by· demurrer. (p. 459.)

                    .    91 W. Va.   .

4. EVIDENCE—*Oral Evidence of Contemporaneous Verbal Construction of Unambiguous Written Contract, Inadmissible.*

Oral evidence of a contemporaneous verbal construction of an unambiguous written contract, is inadmissible.   (p. 460.)

5. SAME—*Warranty Cannot Be Ingrafted on Deed for Leasehold by Parol Evidence.*

The grantee in a deed by which a leasehold interest is transferred to him, in consideration of money paid and to be paid in installments for which notes are given, cannot engraft upon the instrument, by oral evidence, a warranty of the value or qualities of the lease, even though the deed contains a provision clothing the grantor with a power of defeasance, in the event of non-payment of the notes, by saying that in such case, the agreement (deed) "shall become null and void."   (p. 462.)

Action by W. S. Leckie and others against L. G. Bray. Order sustaining demurrers to the declaration.  Case certified.

*Affirmed.*

*Goodykoontz, Scherr & Slaven* and *Okey P. Keadle,* for plaintiffs.

*Bias & Chafin,* for defendant.

POFFENBARGER, PRESIDENT:

Whether either or both of two special counts in a declaration in assumpsit are sufficient is the question submitted upon this statutory certificate.  Demurrers to them, as they stood in the original declaration and in an amended declaration, were sustained.

Both are based upon a provision in a deed by which the defendant assigned and transferred to the five plaintiffs, his interest in a certain coal lease and the improvements thereon, in consideration of $7,000.00, of which $2,000.00 was paid in cash and the residue deferred in three equal installments evidenced by negotiable notes payable, respectively, in three, six and nine months from their common date, Oct. 14, 1920.  Though denominated a "contract of agreement," the instrument by which the transfer was effected

is an *inter partes* deed, an indenture. It sells and conveys the property and contains an habendum clause; but there is a condition in it expressed in these terms: "It is also agreed that if the above mentioned purchase money notes be not paid at maturity, then this agreement shall become null and void." They were not paid at maturity, but were paid by the makers, after maturity, to transferrees of the payee, who had taken them for value, in good faith and without notice of the provision just quoted, upon which the two counts in question are founded. The purpose of the action is recovery from the defendant, the transferror of the notes, the amount thereof, with interest and costs, upon the theory of a wrongful transfer.

After a full recital of the terms of the deed, the second of the three counts alleges it was understood and agreed, in and by the instrument, that, if the leasehold interest so conveyed "should become an unprofitable venture and could not be worked profitably as a coal mining plant," the grantees, upon written notice of their intention so to do, might abandon the property and surrender their rights, whereupon the agreement should become null and void and the notes and debts represented by them "become cancelled and of no effect"; that the defendant, "by said agreement in writing," in consideration of said money and notes, agreed that the plaintiffs should have such right of abandonment and surrender and that, in such case, he would not transfer the notes; and that the plaintiffs, finding the lease unprofitable, did abandon the property and surrender their right, after notice of their intention so to do, but that the defendant, nevertheless, in violation of his agreement, transferred the notes to innocent persons to whom the plaintiffs had been compelled to pay them.

The third count sets up a verbal agreement of the tenor and purport of that claimed in the second and then charges that the parties, having entered into it, had it reduced to writing by a scrivener who, in attempting to express the stipulation for right of abandonment and surrender, chose and adopted the language of the forfeiture clause above

quoted, which both he and the defendant represented to the plaintiffs was a correct and sufficient expression of the agreement as it had been verbally made; and that the plaintiffs believed the representation so made to be correct, and, in reliance thereon, had accepted the conveyance, paid the money and executed the notes. This is followed, of course, by allegations of the ground of abandonment, notice, abandonment and transfer of the notes in violation of the agreement, etc.

These two counts were not materially altered by the amendments thereof. The additional allegation in each of them is that, having been compelled by legal process to pay the first note with interest and costs, the plaintiffs paid the other two without their having been reduced to judgments.

In the cardinal rules of interpretation, as stated in the books, there is an implied limitation of the effect, scope and operation of the instrument construed to its terms and provisions. *Scraggs* v. *Hill,* 37 W. Va. 706; *Tichenell* v. *Jackson,* 26 W. Va. 460; *Heatherly* v. *Farmer's Bank,* 31 W. Va. 70. Things not within the letter of a contract are sometimes included in it and effectuated, because they are clearly within its expressed purpose or its spirit. *Raleigh Lumber Co.* v. *Wilson & Son,* 69 W. Va. 598, 603; *Gas Co.* v. *Oil Co.,* 56 W. Va. 402. But there is no authority for any addition to the terms of a written instrument, or transposition or modification thereof, unless it has foundation in the written words of the paper or in a reasonable and fair implication arising out of the words or some provision or provisions thereof. On the contrary, the limitation above referred to has been expressly declared. ''The court should take great care not to make the contract speak where it was intentionally silent; and above all, that they do not make it speak entirely contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties.'' Lord Cockburn, in *Churchward* v. *The Queen,* L. R. 1 Q. B. 173. See also *Berry* v. *Humphries,* 76 W. Va. 668, and *Carper* v. *United Fuel Gas Co.,* 78 W. Va. 433.

In the clause of the contract on which these two counts are based, there is not a word suggestive of any warranty of

the value or qualities of the lease. Neither its profitableness, unprofitableness nor potentialities of any kind are mentioned, indicated or referred to directly or indirectly. Nonpayment of the notes and the consequence thereof constitute its entire subject-matter. They measure its height, depth, length and breadth. The terms manifestly do not include the new subjects of value, quality, results of operation, abandonment, agreement against transfer of the notes and nullification thereof. The terms, "this agreement shall become null and void," do not include them or any of them. "This agreement" means the deed of conveyance. The notes are separate agreements collateral to the deed. Nowhere in the deed is there an express agreement to pay the $5,000.00 represented by the notes. It merely recites the consideration, the cash payment and the execution and delivery of the notes. This clause no doubt vested power and authority in the grantor and payee to render the notes void, by his election to declare a forfeiture of the conveyance for non-payment. That would be a consequence of partial rescission, avoidance of the conveyance for non-performance of a condition subsequent, not the direct operation of any terms or provisions of the deed. Not a word in the clause touches the collateral contracts, the notes. Nor can any of the matters the second count attempts to interpolate by way of construction be brought within the intention and purposes of the parties as expressed in the contract. It conveys certain property in consideration of money paid and to be paid and gives the grantor a power of defeasance for breach of a condition subsequent. To say it was the intention of the parties that the grantees might avoid their contract, by their own default in respect of payment, would impart to the instrument instability and absurdity which the rules of interpretation do not tolerate. *Jacobs* v. *Parodi,* 50 Fla. 541; *Fairbanks* v. *Twin City Supply Co.,* 170 N. C. 315; *Cummings* v. *Nielson,* 42 Utah 157; 13 C. J. 541.

Under the guise or cloak of contemporaneous verbal construction, the third count attempts to lay the ground or foundation for addition to the instrument, of terms and provisions it does not contain, by oral evidence. The declara-

tions or representations alleged in it are not admissible in evidence. *Crislip* v. *Cain*, 19 W. Va. 483; *Hurst* v. *Hurst*, 7 W. Va. 341; *Long* v. *Perine*, 41 W. Va. 314; *Giffin* v. *Fairmont Coal Co.*, 59 W. Va. 480; *Lockwood* v. *Halliday*, 16 W. Va. 657. To permit a party to a contract to allege and prove an oral agreement that "white" written in it should be read "black," or that "promises to pay" should be read "promises not to pay," would open the door to the admission of parol evidence for a purpose denied to it by all authority everywhere. The rule as rigidly excludes additions to written instruments. Of course, the rule against introduction of parol evidence to contradict, vary, add to or take from a written contract, though accorded a high degree of sanctity and rigidly enforced by the courts, like any other mere rule of evidence, may be waived by failure to invoke it. *McGraw* v. *First National Bank*, 85 W. Va. 298, 321; 22 C. J. 1295, citing several cases. Ordinarily, it is invoked on the trial, by an objection to the admission of the evidence. But, on principle, it seems to be clear that the objection may be taken by demurrer to the bill, declaration or other pleading disclosing a claim of right dependent upon inadmissible evidence. In *Barkworth* v. *Young*, 4 Drew. 1, 9, Vice-Chancellor Kindersley observed: "The function of a demurrer is to insist summarily and simply that, on the assumption of the truth of the facts alleged by the bill, the plaintiff is not, according to law, entitled to the relief prayed. It is an appeal to the law of which every judge is bound to take notice, and I never could see what difference it could make in this respect whether the law to which the appeal is made is that which is founded on general principles of law and equity, or that which rests on the authority of a particular statute, or whether the statute on which it rests is one which destroys the right, or only precludes the remedy." Accordingly it is generally held that the statute of limitations and the statute of frauds may be invoked by demurrer, if the pleading to which the demurrer is interposed discloses ground, by allegation or omission, for application of the statute. Here proof of the case alleged is inhibited by law, if that law is invoked. The defendant has absolute right

to invoke it, and there is no good reason why he may not choose his own time for interposition of the objection, provided he does not delay it too long. For the conclusion here stated, a precedent is found in *Cole* v. *George*, 86 W. Va. 346, in which a plea founding a defense upon inadmissible parol evidence was rejected by the trial court and the ruling sustained by this court. In *Aronson* v. *Nurenberg*, 218 Mass. 376, it was held that the trial court had properly refused leave to amend an answer so as to state a defense founded upon inadmissible oral evidence.

If the third count were held good, it would permit the plaintiff to go to trial on a declaration claiming right of recovery upon inadmissible parol declarations and also upon allegations of a peculiar verbal warranty, in a sale of property by written contract, without warranty. The latter is as effectually inhibited by law as the former. *Appalachian Power Co.* v. *Tate*, 90 W. Va. 428; *Erie City Iron Works Co.* v. *Miller Supply Co.*, 68 W. Va. 519; *American Canning Co.* v. *Flat Top Grocery Co.*, 68 W. Va. 698.

Our conclusion is that the rulings upon the demurrers are correct.

*Affirmed.*